# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 215

James Glenn Watson,                                        Petitioner and Appellant

v.

State of North Dakota,                                    Respondent and Appellee

## Nos. 20220103 & 20220104

Appeals from the District Court of Stark and Hettinger Counties, Southwest Judicial District, the Honorable William A. Herauf, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice, in which Justices Crothers and McEvers joined. Chief Justice Jensen filed a dissenting opinion, in which Justice VandeWalle joined.

Kiara C. Kraus-Parr, Grand Forks, N.D., for petitioner and appellant.

James A. Hope (argued), Assistant Stark County State's Attorney, Dickinson, N.D., and Pat J. Merriman (on brief), Assistant Hettinger County State's Attorney, for respondent and appellee.

**Tufte, Justice.**

[¶1]   James Watson appeals from a district court order denying his application for postconviction relief from two convictions entered upon a conditional plea of guilty. He argued to the district court that the court should allow him to withdraw his plea because he did not have effective assistance of counsel when he pleaded guilty. We conclude Watson failed to establish the prejudice necessary to satisfy the second prong of the *Strickland* test. We affirm.

I

[¶2]   A Golden Valley County jury found Watson guilty of continuous sexual abuse of a child. Watson then entered a conditional *Alford* guilty plea to a charge of sexual assault in Hettinger County and a charge of continuous sexual abuse of a child in Stark County, reserving his right to appeal the district court's grant of the State's motions for continuance in all three cases. This Court reversed Watson's conviction from Golden Valley County because of a violation of his speedy trial right, but affirmed the other two convictions. *State v. Watson,* 2019 ND 164, ¶¶ 34, 41, 930 N.W.2d 145.

[¶3]   After his Golden Valley conviction was reversed, Watson moved to withdraw his conditional *Alford* plea in the Hettinger and Stark County cases, arguing that it had been contingent upon his conviction in the Golden Valley case. *State v. Watson,* 2021 ND 18, ¶ 4, 954 N.W.2d 679. This was the first time he argued that his guilty plea was so conditioned. The district court denied his motions, and this Court affirmed. *Id*. at ¶ 18. We concluded that the district court did not abuse its discretion in denying Watson's motion to withdraw his guilty pleas in Stark and Hettinger Counties. *Id*. at ¶ 17.

[¶4]   Watson then applied for postconviction relief in Stark and Hettinger Counties seeking to withdraw his guilty plea because he was denied effective assistance of counsel, claiming his lawyer, Kevin McCabe, incorrectly advised him that if this Court reversed his Golden Valley County conviction, he would be able to withdraw from his guilty plea in the other two counties. Watson

alleges that he would not have pleaded guilty but for McCabe's error. He argues that the district court erred in denying his application, and he now appeals that order.

[¶5]   There is no express indication in the plea agreement that Watson had the right to withdraw his guilty plea if this Court reversed the Golden Valley County conviction. However, McCabe testified that he erroneously told Watson in the hallway before entry of his guilty plea that if the Golden Valley judgment was reversed by this Court, he would be able to withdraw his guilty plea in Stark and Hettinger Counties. None of the state's attorneys present at the guilty plea recalled McCabe having made this statement. The district court noted in its denial of Watson's motion that Watson waited a year and a half after the change of plea hearing to raise this argument and did not do so in his initial appeal.

## II

[¶6]   Postconviction relief proceedings "are civil in nature and governed by the North Dakota Rules of Civil Procedure." *Chase v. State*, 2021 ND 206, ¶ 8, 966 N.W.2d 557. A criminal defendant may withdraw a guilty plea after sentencing only by demonstrating a manifest injustice. N.D.R.Crim.P. 11(d)(2); *State v. Yost*, 2018 ND 157, ¶ 6, 914 N.W.2d 508. We will not reverse a district court's finding of a manifest injustice unless the court has abused its discretion. *Id*.; *Isxaaq v. State*, 2021 ND 148, ¶ 7, 963 N.W.2d 260. "A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or it misinterprets or misapplies the law." *Id*.

[¶7]   "A guilty plea must be entered knowingly, intelligently, and voluntarily to be valid." *State v. Hoehn*, 2019 ND 222, ¶ 18, 932 N.W.2d 553. The criminal defendant must at least have a "sufficient awareness of the relevant circumstances and likely consequences." *Hart v. Marion Correctional Inst.*, 927 F.2d 256, 257 (6th Cir. 1991) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). "A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea." *Damron v. State*, 2003 ND 102, ¶ 9, 663 N.W.2d 650 (internal citation omitted); *see also United States v. Broce*, 488 U.S. 563, 569 (1989). Whether or not a guilty plea

2

was voluntary depends on "whether that advice was within the range of competence demanded of attorneys in criminal cases." *Id*.

[¶8] A manifest injustice may stem from ineffective assistance of counsel. *Everett v. State,* 2015 ND 149, ¶¶ 3-4, 864 N.W.2d 450. A criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment and N.D. Const. art. 1, § 12. *DeCoteau v. State*, 1998 ND 199, ¶ 6, 586 N.W.2d 156. The defendant bears the burden to demonstrate ineffective assistance of counsel. *Abdi v. State*, 2000 ND 64, ¶ 29, 608 N.W.2d 292 (citing *State v. Skaro*, 474 N.W.2d 711, 714 (N.D. 1991)). The defendant must show "(1) counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Yoney v. State*, 2021 ND 132, ¶ 7, 962 N.W.2d 617 (citing *Strickland v. Washington*, 466 U.S. 668, 687-96, 694 (1984)). This is a "heavy burden." *Yoney*, at ¶ 7.

[¶9] Watson argues on appeal that this Court should reverse the district court's order dismissing his application for post-conviction relief and remand so he may withdraw his guilty pleas made in the Hettinger County and Stark County prosecutions against him. He argues that his guilty plea was invalid because McCabe incorrectly counseled him about the ramifications of pleading guilty and failed to reduce the terms of the plea agreement into writing in violation of N.D.R.Crim.P 11(a)(2), which, he argues, would have prevented this misunderstanding. Therefore, because his counsel was ineffective, he did not knowingly, intelligently, and voluntarily plead guilty.

III

A

[¶10] When applying *Strickland*, courts need not address both prongs if a court can resolve the case by addressing only one prong. *Morales v. State*, 2019 ND 137, ¶ 8, 927 N.W.2d 401. To satisfy *Strickland* prong two as applied to guilty pleas, the defendant must show that "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Booth v.* State, 2017 ND 97, ¶ 9, 893 N.W.2d 186

3

(quoting *Lindsey v. State*, 2014 ND 174, ¶ 19, 852 N.W.2d 383); *see also Bahtiraj v. State*, 2013 ND 240, ¶ 15, 840 N.W.2d 605 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); *U.S. v. Nesgoda*, 559 F.3d 867, 870 (8th Cir. 2009).

[¶11] An applicant for postconviction relief on the basis of ineffective assistance of counsel "must specify how and where counsel was incompetent and the probable different result." *Morales v. State*, 2019 ND 137, ¶ 6. It is insufficient for a petitioner to merely declare with conclusory, self-serving after-the-fact assertions that but for his counsel's errors, the petitioner would not have pleaded guilty. *Isxaaq*, 2021 ND 148, ¶ 11. A defendant does not satisfy this second prong if the evidence shows that he was "eager to plead guilty." *Nesgoda*, 559 F.3d at 870. This Court must look beyond a petitioner's "subjective, self-serving statement" and look to "contemporaneous evidence to substantiate a defendant's expressed preferences." *Isxaaq*, at ¶ 11. We may take into account the strength of the prosecution's case as well as how the "reasonable defendant" would take the State's case into account. *Id*. at ¶¶ 17-18. We may also factor in the reasonable defendant's concern for "the amount of prison time they will serve" and a defendant's desire to limit exposure to incarceration. *Bahtiraj*, 2013 ND 240, ¶ 17.

[¶12] This Court has looked to the following factors to determine whether there is a reasonable probability that, but for counsel's errors, a defendant would not have pleaded guilty and would have insisted on going to trial:

> (a) whether the defendant pleaded guilty in spite of knowing that the advice on which he claims to have relied might be incorrect, (b) whether pleading guilty gained him a benefit in the form of more lenient sentencing, (c) whether the defendant advanced any basis for doubting the strength of the government's case against him, and (d) whether the government would have been free to prosecute the defendant on counts in addition to those on which he pleaded guilty.

*Bahtiraj*, 2013 ND 240, ¶ 17 (quoting *Chhabra v. United States*, 720 F.3d 395, 408 (2nd Cir. 2013)).

4

[¶13] Watson asserts that but for McCabe's error, he would not have pleaded guilty. Other than this bare assertion, he brings no other evidence to support a finding that but for his counsel's advice he would have proceeded to trial. The district court found this to be a self-serving assertion in the face of other factors that suggest he otherwise would have pleaded guilty. *Strickland's* second prong inquires whether evidence in the record shows that but for counsel's errors Watson would not have pleaded guilty. When we look beyond his subjective, self-serving statements, the record supports the district court's finding that Watson had additional reasons to plead guilty.

[¶14] First, McCabe testified that he met with Watson to help him decide whether he wanted to plead guilty after his Golden Valley County conviction. Watson indicated to McCabe that he did not want to go through two more trials in both Stark and Hettinger Counties. McCabe testified that "the whole purpose" behind Watson's pleading guilty was to avoid putting his family or the State through the burdens associated with additional trials.

[¶15] Second, Watson was also motivated to accept the guilty plea because it reduced the charges against him and his exposure to additional incarceration, dictated that his sentences would run concurrently instead of consecutively, and gave him credit for the time he had already served. McCabe testified that Watson told him he would accept a plea agreement if the State would offer him sentences in Stark and Hettinger Counties that would run concurrently, rather than consecutively, with the Golden Valley County sentence, thus reducing the total length of Watson's incarceration. Watson stated in a pre-sentencing investigation report that he was willing to do whatever it would take to get home to his family as soon as possible.

[¶16] Third, the fact that the conditional plea reserved Watson's right to appeal his convictions also encouraged him to plead guilty. The sole issue in Watson's direct appeal to this Court was violation of his speedy trial right. *Watson*, 2019 ND 164, ¶ 1. Watson had consistently objected to a violation of his speedy trial right and clearly intended to appeal his convictions on the basis of this argument at the time of his change of plea hearing. The guilty plea agreement reserved for Watson the right to appeal his convictions on the basis of a speedy

trial claim in each case. Therefore, the State's agreement to this condition would have encouraged him to plead guilty.

[¶17] The district court found that Watson's intent at the time he pleaded guilty was to appeal any continuance outside of the 90 days and that he believed he would either win all three cases on appeal or lose all three cases on appeal. The court found Watson was of the mindset that there was no need to tie the cases together or have them be conditional or contingent upon one another; it was an "all in either win or lose strategy." As argued on this appeal, Watson describes two different conditions on his guilty pleas. The first was that in each of the two cases, he conditioned his guilty plea on a reservation of the right to appeal his claim of a speedy trial violation *in that case*. The second, central to the claim on postconviction relief, is that he conditioned each guilty plea on the possibility that his conviction in that case would be upheld on appeal but his conviction in the Golden Valley case would be reversed. There is no evidence to support the argument that Watson or McCabe foresaw the possibility of a split decision on appeal, and the district court so found. The distinct remedies for the two scenarios highlight the significant omission of evidence supporting both conditions on Watson's guilty plea. If Watson's plea in Stark County was conditioned on his right to appeal his speedy trial claim in that case and he was successful on appeal, he would be entitled to an acquittal in that case. But if his plea in the Stark County case was conditioned on the result of the appeal in the Golden Valley case, his remedy would only be to withdraw his plea. As a result of the significant difference in remedies, the absence of any evidence that the difference in the two distinct conditions was discussed by Watson and McCabe supports the district court's finding that there was no intent by Watson to account for this less likely possibility and no basis on which the district court might find failure to account for this possibility would have changed Watson's decision.

[¶18] Watson had the independent motivation to protect his family from the stress of another trial, avoid consecutive sentences, and reduce the charges against him, and the plea agreement did not prevent him from appealing. The contemporaneous evidence supports the finding that Watson was eager to plead guilty whether or not he also had a mistaken belief that he would be able

to withdraw his guilty plea in both Hettinger County and Stark County if he were to win on appeal only in the Golden Valley case. Watson failed to meet his burden in the district court by asserting that but for McCabe's representation, he would not have pleaded guilty.

B

[¶19] The applicant must additionally show the district court that the decision to not plead guilty would have been "rational under the circumstances." *Isxaaq*, 2021 ND 148, ¶ 11. "This standard of proof is 'somewhat lower' than the common 'preponderance of the evidence' standard." *Bahtiraj*, 2013 ND 240, ¶ 16 (citing *Padilla v. Commonwealth*, 381 S.W.3d 322, 328 (Ky. Ct. App. 2012)). The court is required to examine and predict the "likely outcome of a possible trial." *Id.* (citing *Hill*, 474 U.S. at 59-60). Therefore, the applicant must allege facts such as "valid defenses, a pending suppression motion that could undermine the prosecution's case, or the realistic potential for a lower sentence." *Id.* (citing *Stiger v. Commonwealth*, 381 S.W.3d 230, 237 (Ky. 2012)). In short, not only must the movant show that he would not have pleaded guilty but for counsel's mistakes, but he must also show that the facts in the record suggest that the proceeding would have probably come out differently. *Id.* (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)); *Morales*, 2019 ND 137, ¶ 10.

[¶20] Refusing a plea deal may be viewed as not rational if the district court determines a defendant failed to provide evidence that the results of a trial would have been different, failed to provide evidence in the defendant's defense, failed to point to weaknesses in the State's case, or provided nothing but a bare assertion that the defendant would not have pleaded guilty but for the ineffective assistance of counsel. *Bahtiraj*, 2013 ND 240, ¶¶ 18-19. A defendant may fail to demonstrate that a refusal to plead guilty would have been rational whenever the evidence present at the proceedings amounts to substantial evidence of guilt. *Id.*

[¶21] Watson failed to show that not pleading guilty would have been rational under the circumstances. The record contains nothing to indicate the outcome

7

of a possible trial in Hettinger and Stark Counties may have been different from the result in Golden Valley County.

[¶22] First, nowhere does Watson provide evidence such as valid defenses, pending suppression motions, or the realistic potential for a lower sentence to support the notion that a trial would have been different, nor does he point to weaknesses in the State's case against him as demanded by our case law. In fact, he does not argue that the results would have been different had he gone to trial. Contrastingly, McCabe testified that if Watson had gone to trial again, the main defense he would have used would have been attacking the credibility of his accuser. McCabe also testified that this was the identical defense that Watson used and the jury rejected in the Golden Valley County trial. The fact that a jury had previously rejected Watson's main defense suggests that pleading guilty was the only reasonable option for Watson.

[¶23] Second, the evidence against Watson amounts to substantial evidence of guilt. First, the victim knew of a birthmark located near Watson's genitals and testified that she first saw it while performing oral sex on Watson. The State also has photographic evidence of the birthmark. The victim had lengthy and detailed descriptions of the sexual abuse, where it occurred, and what happened, which suggested to the court that her testimony was true. Next, the jury listened to a pretextual call between Watson and the victim. The victim said to Watson, "I can't get the fact that we had sex out of my mind." Watson was silent for seventeen seconds before responding, "Oh." He didn't deny the victim's statement, nor did he get angry. Instead, Watson changed the subject. A law enforcement officer who was present at the pretextual call testified that the victim ended the phone call because it was too emotionally difficult for her to continue. Additionally, there was other evidence that Watson was guilty, such as testimony by the victim's husband and law enforcement officers who worked on the case as well as a video recording of the Bureau of Criminal Investigation's interview of Watson. Psychological tests of Watson showed that he was in denial about his actions, was very defensive, and provided conflicting information at his psychological interview. Finally, Watson testified at his change of plea hearing that there was enough factual evidence for the jury to find him guilty.

[¶24] The district court did not abuse its discretion in concluding that Watson failed to demonstrate *Strickland* prejudice. We affirm.

[¶25]   Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte

**Jensen, Chief Justice, dissenting.**

[¶26] I respectfully dissent.

I

[¶27] James Glenn Watson was charged with sexual abuse of a minor in four different counties: Golden Valley, Stark, Hettinger, and Billings. The cases were not consolidated, but much of the pretrial proceedings were held jointly and the cases proceeded along a parallel schedule. Oftentimes a single order was issued with multiple case captions for filing in the different counties. Throughout the proceeding the parties frequently discussed the possibility of a joint resolution and the cases were handled as a single collective case.

[¶28] The State moved to dismiss the Billings County case before any of the cases were tried or guilty pleas had been entered. The State's motion to dismiss asserted, "Pursuant to very recently received investigative reports, the State will not be able to prove the above charge . . . ." The motion was granted.

[¶29] Prior to trial in any of the counties, Watson challenged the continuation of the prosecutions through an assertion his right to a speedy trial had been violated in all three of the cases. His request to dismiss the cases was denied and he was convicted on several counts in the first county to proceed to trial, Golden Valley County. Watson appealed, alleging in part the case should have been dismissed because his right to a speedy trial had been violated.

[¶30] Following his conviction in Golden Valley County, Watson was advised by his attorney to plead guilty in the cases pending in the remaining two

counties. Watson's counsel advised him that if he were successful on appeal in the Golden Valley County case he would be able to withdraw his guilty pleas in Stark and Hettinger Counties. Relying on that advice he entered conditional guilty pleas, denying he committed the offenses but acknowledging there was sufficient evidence to support a conviction, and preserving his right to appeal the denial of his request to dismiss the cases because his right to a speedy trial had been vacated.

[¶31] On direct appeal, this Court addressed Watson's assertion the district court erred in denying his motions to dismiss the proceedings asserting speedy trial violations in each of the counties. This Court reversed the denial of Watson's motion to dismiss in the Golden Valley County case, but affirmed the denial of the motions in the other counties. *State v. Watson*, 2019 ND 164, 930 N.W.2d 145.

[¶32] Watson subsequently sought to withdraw his guilty pleas in Stark and Hettinger Counties, asserting he had entered conditional pleas under the representation that if he prevailed on his assertion his speedy trial rights had been violated, he would be allowed to withdraw the pleas. Specifically Watson asserted the following:

> In this case, Watson plead guilty following his conviction in Golden Valley County on similar charges. His reason for pleading guilty was contingent on the fact that he was convicted in Golden Valley County. He also wanted to save the State, as well as his family the stigma of going through another trial. He also was led to believe that pleading guilty on this charge really wouldn't matter because any sentence that he would receive would run concurrently and in conjunction with any sentence that he would receive in the Golden Valley County case. In fact, sentencing for all three county cases was held on the same date of March 13, 2018. Because Golden Valley County case 17-2017-CR-34 was eventually overturned by the North Dakota Supreme Court, Watson should be allowed to withdraw his guilty pleas in Stark County (Case No. 45-2017-CR-00596) and Hettinger County (Case No. 21-2017-CR-00030).

[¶33] The judgments in Stark and Hettinger Counties noted the pleas were conditional, preserving the right to appeal the denial of Watson's motion to

10

dismiss because his speedy trial rights had been violated. Although the pleas were conditional, the judgments did not cross-reference or otherwise couple the result in the Golden Valley County case to the other counties and no written agreement between the State and Watson had been prepared indicating the results of the Golden Valley case were coupled to the cases. The district court denied the motions to withdraw. This Court affirmed citing to the failure to formally couple the result of the Golden Valley County case to the conditional guilty pleas in the other counties. *State v. Watson*, 2021 ND 18, 954 N.W.2d 679.

[¶34] Watson subsequently petitioned the district court in Stark and Hettinger Counties for post-conviction relief. He asserted he was denied effective assistance of counsel because his attorney provided him with incorrect advice leading him to believe he would be able to withdraw his guilty pleas if he prevailed in the Golden Valley County case, or was ineffective by failing to adequately create a record confirming that if he prevailed in the Golden Valley County case he would be able to withdraw his guilty pleas. Watson's lawyer testified that he told Watson prior to the entry of the guilty pleas that if the Golden Valley judgment was overturned by this Court, he would be able to withdraw his guilty plea in Stark and Hettinger Counties. Watson indicated that he would not have entered guilty pleas in Stark or Hettinger County but for the advice of his counsel. His petitions were denied and Watson initiated the current appeal.

[¶35] The majority notes the district court relied upon the approximately year and one-half between Watson's initial guilty pleas and his requests to withdraw those pleas. Majority, at ¶ 5. The court's reliance on the lapse of time is misplaced. Watson would not have been aware if there was an issue until after his request to withdraw the guilty pleas had been denied. He entered his guilty pleas, all three cases were appealed, he prevailed in the Golden Valley case, he filed his motions to withdraw his guilty pleas in Stark and Hettinger Counties, and it was not until the district court ruled on those motions that he would have been aware there were problems with the advice he had received or the failure to properly record his conditional pleas.

11

## II

[¶36] "Postconviction proceedings are civil in nature and the applicant must establish the grounds for relief." *Thomas v. State*, 2021 ND 173, ¶ 6, 964 N.W.2d 739. As we noted in *Thomas*:

> The standard of review in postconviction proceedings is well established:
>
> > "A trial court's findings of fact in a post-conviction proceeding will not be disturbed on appeal unless clearly erroneous under N.D.R.Civ.P. 52(a). A finding is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support it, a reviewing court is left with a definite and firm conviction a mistake has been made. Questions of law are fully reviewable on appeal of a post-conviction proceeding."
>
> *Hunter* [*v. State*, 2020 ND 224], at ¶ 11[, 949 N.W.2d 841] (quoting *Brewer v. State*, 2019 ND 69, ¶ 4, 924 N.W.2d 87).
>
> To prevail on a claim for ineffective assistance of counsel, the applicant must show: (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Hunter*, 2020 ND 224, ¶ 10, 949 N.W.2d 841 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The question of ineffective assistance of counsel is a mixed question of law and fact and is fully reviewable on appeal. *Hunter*, at ¶ 11. However, a court's findings of fact in a postconviction proceeding will not be reversed on appeal unless they are clearly erroneous under N.D.R.Civ.P. 52(a). *State v. Steen*, 2004 ND 228, ¶ 8, 690 N.W.2d 239.

*Thomas*, at ¶¶ 6-7.

## III

[¶37] To prevail on his claim for relief, Watson must show his counsel's representation fell below an objective standard of reasonableness. Watson asserted in the district court the following:

> As a result of his conviction in the Golden Valley County file, Mr. Watson entered conditional pleas of guilty to the remaining charges. Mr. Watson contends that he did so based upon a specific and firm assurance from his trial counsel that if he was successful in overturning the Golden Valley conviction, then he would then be allowed to withdraw his pleas of guilty on the remaining files and argue those cases in front of a jury if necessary.

[¶38] Watson's counsel testified during the post-conviction proceedings he had advised Watson that if he prevailed on appeal in the Golden Valley proceedings he would be able to withdraw his guilty pleas in Stark and Hettinger Counties. This advice was provided before the entry of the pleas. The district court appears to have balanced the testimony of Watson's counsel against the testimony of the prosecutors who testified they did not recall any discussions to couple the appellate result of the Golden Valley case with the other cases. This balancing is misplaced. Regardless of whether Watson's counsel had an agreement and failed to place the agreement of the record, or he gave Watson erroneous advice, he failed to preserve Watson's right to withdraw his guilty pleas. Watson's counsel's representation fell below an objective standard of reasonableness. Watson has satisfied the first prong of the *Strickland* test. The majority has elected not to address whether the representation was ineffective, permissibly relying on the conclusion Watson failed to show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

## IV

[¶39] Watson is required to show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Both the district court and the majority spend significant time speculating about Watson's motives for entering guilty pleas in Stark and Hettinger Counties. What both the district court and the majority fail to do is

13

address Watson's actual assertions, and ignoring the context within which the guilty pleas were made.

[¶40] Cases were initiated in four counties. Prior to the trial in Golden Valley County the case in Billings County was dismissed pursuant to the State's representation it possessed insufficient evidence to support a conviction. At that point in time Watson had prevailed in one of the four prosecutions.

[¶41] Watson challenged all of the proceedings, asserting his right to a speedy trial had been violated in each of the proceedings. To that point, while not formally consolidated, the cases were handled together, with joint hearings and single orders using multiple captions to include each of the counties. The district court, in its order denying the motions to withdraw Watson's guilty pleas, acknowledged the four cases were treated as a single proceeding by noting the following:

> To me, it was all treated as one case up until the end. I didn't know that it was going to be split out until the pre-trial, which was on the 12th of December. At that time, despite what may have been briefed, all counties were there. It's clearly in the notes that everybody was there.

[¶42] Watson proceeded to trial in Golden Valley County and was convicted. Both the district court and the majority fail to recognize the importance of the timing of the conviction. To that point, Watson had only demonstrated a willingness to proceed to trial, and nothing in the record suggests he would have entered guilty pleas in either Stark or Hettinger Counties. To the contrary, without the conviction the posture of the case would have remained as three pending cases and the dismissal in Billings County. It is the conviction that drove Watson's subsequent guilty pleas, and as explained in his request to withdraw his guilty pleas:

> His reason for pleading guilty was contingent on the fact that he was convicted in Golden Valley County. He also wanted to save the State, as well as his family the stigma of going through another trial. He also was led to believe that pleading guilty on this charge really wouldn't matter because any sentence that he would receive would run concurrently and in conjunction with any sentence that

14

he would receive in the Golden Valley County case. In fact, sentencing for all three county cases was held on the same date of March 13, 2018.

[¶43] Watson's trial counsel also provided the following information to the district court:

Prior to getting to that point—I'll be honest with you, I did not believe that the Supreme Court would look at three separate—I figured, because everything was done always together, that they would look at them together as one, even though that they were different court times specified for each case—or each county and each case. So when we went to the Supreme Court, this wasn't an issue, and the reason this wasn't an issue is because Mr. Watson's belief, my belief, was that if the case over in Golden Valley County got overturned, there's nothing for this to be continued—these cases ran concurrent. Well, if there is no case over in Golden Valley County, there's nothing to run these things concurrent with because that case is gone. It's done. It's out of there.

His counsel further explained the following:

However, if that one—if that would have been a not guilty verdict, Your Honor, there's no way that he would have plead guilty to the other ones. He would have had Stark County trial and he would've had Hettinger County trial. But because that one—they found him guilty over there, he decided that the best thing for him to do at that time was to accept pleas from the State in both counties and accept what they had to offer. But it was always conditional—it was always an Alford plea and it was always conditional on what happened over in Golden Valley County.

[¶44] The district court and the majority focus on all the potential benefits of pleading guilty in Stark and Hettinger Counties such as a favorable plea agreement and no additional trials. However, those circumstances would never have arisen but for the conviction. It is the conviction in Golden Valley County that was the motivating factor for the entry of guilty pleas, and Watson was incorrectly advised about, or his counsel had failed to preserve, Watson's ability to withdraw his guilty pleas if the conviction in Golden Valley County was overturned.

15

[¶45] I am left with a firm and definite conviction that district court erred in determining Watson failed to show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Watson pled guilty in Stark and Hettinger Counties following his conviction in Golden Valley County after receiving and relying on ineffective assistance of counsel. Absent the representation he would be able to withdraw those pleas if successful in the Golden Valley County appeal, Watson would not have pled guilty.

[¶46] Jon J. Jensen, C.J.
Gerald W. VandeWalle